IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SAMUEL FREEMAN,**

    **Petitioner,**

v.

**TIMOTHY BRUNSMAN, Warden,**

    **Respondent.**

CASE NO. 2:09-cv-920
JUDGE GRAHAM
MAGISTRATE JUDGE KEMP

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to its own motion to consider the sufficiency of the petition under Rule 4 of the Rules Governing Section 2254 Proceedings in the United States District Courts. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On October 24, 2005, Patrick Chew ("Patrick"), and his sister Monique Chew ("Monique"), were students at Life Skills, a school located on Dublin-Granville Road in Columbus. The students were released early from classes that day, which meant that Patrick and Monique's mother was not available to pick them up at school, so the two decided to take a COTA bus home. On their way to the bus stop, Patrick and Monique stopped at a convenience store, where Patrick purchased a Black and Mild cigar to smoke. The two then rode the bus to Hudson Street and McGuffey Road, where they exited the bus and began to walk to their home nearby on Howey Road. They began walking through an alley running parallel to Hudson

Street. As they walked, Patrick borrowed a lighter from Monique and lit the cigar he had purchased.

Appellant and his friend, Cortez Dozier ("Cortez"), were also students at Life Skills, although neither knew Patrick or Monique from the school. Monique testified that she had seen both appellant and Cortez before, because she believed both had attended Linden McKinley High School at the same time she had.FN1 The two rode the same COTA bus as Patrick and Monique, and also got off the bus at Hudson and McGuffey. Appellant and Cortez followed Patrick and Monique into the alley, and one of the two asked if he could borrow a lighter.

FN1. In fact, only Cortez had attended Linden McKinley.

Monique gave her lighter to Patrick, and continued walking toward home. As she walked, Monique looked back to make sure nothing was happening with Patrick. When she looked back a second time, Monique saw Cortez running away. Monique then looked back a third time, and saw appellant holding a gun pointed at Patrick. Monique yelled and walked back toward appellant and Patrick. Monique stated that Patrick lifted his right hand toward appellant when the gun fired and Patrick fell to the ground. Monique then testified that appellant very quickly reached into Patrick's front pants pocket, and then began to run away. Monique stated that as appellant was running away, he slipped on some gravel, dropped something she could not identify, paused to pick up the object, and then continued running. Monique then went to Patrick and saw that he was bleeding from the mouth. She attempted to stop the bleeding, and then ran home to call 911.

Cortez also testified. He stated that he was the one who had asked to borrow the lighter, and that after he had used the lighter he began walking back down the alley. Cortez testified that as he walked away, appellant and Patrick were talking. Cortez heard a gunshot, looked back and saw Patrick "flinching back." Cortez then testified that he continued walking to appellant's house, arriving there after appellant.

The state also offered testimony from Denis Simiou, the owner

of an automobile repair shop on Hudson Street. Simiou testified that he was on Hudson Street test-driving a vehicle that he had just completed repairing when he heard a gunshot. Simiou looked around and saw smoke and a person falling to the ground. He also testified that he saw a person running from the scene drop what he believed was a gun. The person turned to retrieve the gun and then continued running.

Patrick was taken to the hospital, where he died on November 1, 2005. The cause of death was determined to be a gunshot that entered Patrick's left chin and severed his spinal cord. A search of the clothes Patrick was wearing revealed a multi-tool, a key ring and key, a condom, a calculator, his wallet and ID, and $117.10 in cash. Investigators could not determine that anything had been taken from Patrick's pockets.

On November 9, 2005, acting on an anonymous tip, police recovered a .45 caliber handgun wrapped in a dark-colored hooded sweatshirt. Testing showed that the gun, while not being in very good condition, was in operating order. A shell casing recovered from the scene of the shooting was found to match the gun, and bullet fragments recovered from Patrick's body were consistent with having been fired from the gun, although a match could not be definitively made.

Police investigators showed Monique yearbooks from Linden McKinley High School, from which she identified Cortez. Further investigation identified appellant as a friend of Cortez's. Police then prepared a photo array that included a photo of appellant. Monique identified appellant as the person she believed was the shooter from the photo array.

At trial, appellant testified on his own behalf and admitted that he was the person who shot Patrick, but claimed it was an accident. Appellant stated that Patrick had asked if either appellant or Cortez knew where he could buy a gun, and that appellant then took out the gun he was carrying to see if Patrick was interested in buying the gun. Appellant further stated that there was some question regarding the gun's condition, including that appellant told Patrick the gun might be jammed. Appellant stated that Patrick tried to take the gun

> from appellant's hand when it went off, and that he ran away because he did not know what else to do. Appellant denied reaching into Patrick's pocket while Patrick was lying on the ground. Appellant also testified that he arranged to have the anonymous tip regarding the gun called in and arranged for the gun to be found.
>
> The grand jury indicted appellant on one count of aggravated murder and one count of aggravated robbery, each with a firearm specification. The trial court instructed the jury on the lesser-included offense of murder, but denied defense counsel's request to instruct the jury on the offense of reckless homicide. The jury returned verdicts of guilty on the charges of aggravated murder and aggravated robbery, as well as on the firearm specifications. The trial court merged the two firearm specifications. On the charge of aggravated murder, the trial court sentenced appellant to life imprisonment with parole eligibility after 30 years, plus a mandatory term of incarceration of three years for the firearm specification. On the charge of aggravated robbery, the trial court sentenced appellant to a term of nine years, and ordered that term to be served concurrently with the term on the aggravated murder sentence.

*State v. Freeman*, 2007 WL 4444394 (Ohio App. 10th Dist. December 20, 2007). Petitioner filed a timely appeal in which he raised the following assignments of error:

> 1. The trial court committed reversible error and deprive [sic] Appellant of due process of law by refusing to provide the jury with an instruction on the lesser-included offense of reckless homicide.
>
> 2. Appellant's conviction is not supported by sufficient evidence.
>
> 3. Appellant's conviction is against the manifest weight of the evidence.

See id. On December 20, 2007, the state appellate court affirmed the trial court's judgment. *Id*. On May 7, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal.

4

*State v. Freeman,* 117 Ohio St.3d 1499 (2008).

On October 15, 2009, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner was deprived of due process of law by incomplete jury instructions, over objection.
>
> 2. Petitioner was denied due process where the evidence at trial was insufficient to prove each element of the charged offense beyond a reasonable doubt.
>
> 3. Petitioner was deprived of effective counsel on direct appeal, violating the Sixth and Fourteenth Amendments.
>
> 4. Petitioner was denied right to confront adverse witnesses by introduction of hearsay testimony of non-testifying witness.
>
> 5. Petitioner was deprived of effective counsel where trial counsel failed to object to the unprovoked shackling of petitioner throughout the trial, in violation of the Sixth and Fourteenth Amendments.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, provides for a one-year statute of limitations on the filing of habeas corpus actions. 28 U.S.C. §2244(d)(1) provides:

> (d)(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of -
>
> (A) the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1),(2).

Here, petitioner's judgment of conviction became final on August 5, 2008, ninety days after the Ohio Supreme Court's May 7, 2008, dismissal of his appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court. *See Clay v. United States*, 537 U.S. 522, 524-25 (2003); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The statute of limitations expired one year later, on August 5, 2009. Petitioner, however, waited until October 6, 2009 to execute the instant habeas corpus petition. Further, he has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004)(citations omitted).

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as time-barred.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge